# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| CHARLES TODD CLUGSTON, | Cause No. CV 13-253-M-JCL |
| Petitioner, | |
| vs. | ORDER DENYING PETITION AND DENYING CERTIFICATE OF APPEALABILITY |
| MIKE BATISTA, Director, Montana Department of Corrections; and LEROY KIRKEGARD, Warden, Montana State Prison, | |
| Respondents. | |

This case comes before the Court on Petitioner Charles Todd Clugston's application for writ of habeas corpus under 28 U.S.C. § 2254. Clugston is a state prisoner represented by Chad M. Wright. On March 28, 2014, Respondents ("the State"), represented by Pamela Collins, filed an Answer. Clugston filed a reply on April 28, 2014.

On April 15, 2014, the parties consented in writing to a magistrate judge's exercise of jurisdiction for all purposes, including entry of judgment. Consents (Docs. 10, 10-1); D. Mont. L.R. 72.1, 72.2(a), 73.1.

## I. Proceedings in State Court

Clugston's federal petition challenges convictions and sentences imposed in one consolidated judgment in Montana's Eleventh Judicial District Court, Flathead

County. In one case, No. DC 07-495, Clugston was convicted of criminal endangerment and tampering with evidence. Although Clugston contests the matter here, the criminal endangerment charge in the first case was at least temporally connected with a sexual encounter between Clugston and his wife on October 20, 2007. In the second case, No. DC 09-511, Clugston was convicted of another offense of criminal endangerment and a misdemeanor charge of driving under the influence, based on his driving erratically and endangering other vehicles while he was intoxicated. Although context should make things reasonably clear, nearly all references to "criminal endangerment" in this Order refer to the charge of criminal endangerment in the first case, 07-495.

The first case was filed on October 24, 2007. Clugston was charged with sexual intercourse without consent, a felony violation of Mont. Code Ann. § 45-5-503(1), with a maximum sentence of life or two to 100 years in prison; tampering with evidence, a felony violation of Mont. Code Ann. § 45-7-207(1), with a maximum sentence of ten years in prison; and criminally destroying or tampering with communications, a misdemeanor violation of Mont. Code Ann. § 45-6-105(1)(a), with a maximum sentence of six months in prison. Amended Information (Doc. 7-2) at 1-2.

The charges stemmed from an incident between Clugston and his then-wife, Heather. According to the documents filed in support of the Information, they had

been married for four months and were in the process of divorcing. Heather called 911. Dispatchers heard screaming, but the call was disconnected. Police arrived at the house, heard screaming, entered, and discovered Clugston in an upstairs bedroom in the act of intercourse with Heather, who was screaming. When the officers made their presence known, Heather moved away from Clugston, grabbed a comforter, and moved towards the officers, shouting, "He raped me." Aff. in Supp. of Information (Doc. 7-1) at 3-4 ¶¶ 1-5. Clugston was arrested. At the jail, when he was informed that police would take his underwear as evidence, he removed his underwear and threw them in the holding cell toilet. *Id.* at 4 ¶ 6.

Jury trial commenced on May 11, 2009. Minutes (Doc. 7-3) at 1. On May 14, 2009, evidently due to what the trial judge called "problems with the State's case," *see* Sentencing Tr. (Doc. 7-13) at 14:13, the parties reached an oral plea agreement. Clugston agreed to plead guilty to criminal endangerment, a violation of Mont. Code Ann. § 45-5 207(1), and evidence tampering. At the outset of the hearing, the trial court stated, "I'm vaguely familiar with what this is – the plea agreement is. I would tell you that all – the Court is never bound by these agreements. If the Court does not follow the agreement the Court will allow you to withdraw a plea of guilty if it's entered, okay?" Clugston responded, "Yes, sir." Change of Plea Tr. (Doc. 7-4) at 3:9-15; *see also* Mont. Code Ann. § 46-12-210(1)(d). The trial judge specified that Clugston's destruction of his underwear

was the basis of the evidence-tampering charge, Change of Plea Tr. at 5:7-13, but no one described the factual basis of the criminal endangerment charge. Clugston admitted the elements of the statute, viz., that he "knowingly engage[d] in a course of conduct that created a substantial risk of serious bodily injury" to Heather, although she was not seriously injured. *Id.* at 8:7-18. With one exception, no term of the agreement between Clugston and the State was described on the record. The exception was the prosecutor's statement that "part of the deal was that Mr. Clugston was going to get a sex offender evaluation." Defense counsel Ed Gutierrez-Falla agreed. *Id.* at 9:7-10.

Sentencing was twice continued to allow completion of the sex offender evaluation. Mots. to Continue (Docs. 7-6, 7-7). It apparently was completed on or about November 3, 2009. Evid. Hr'g Tr. at 155:14-19. On November 12, 2009, the State petitioned the trial court to revoke Clugston's release on bond pending sentencing, based on his violation of the condition that he abide by all laws and refrain from consuming alcohol. Pet. to Revoke (Doc. 7-8) at 1-2. The petition was based on Clugston's arrest on November 10, 2009, for driving under the influence. According to the documents filed in support of the petition to revoke and subsequent criminal charges, before Clugston was stopped by an officer, he was driving so erratically that he forced other vehicles off the road. His blood-alcohol content was 0.201. Based on that incident, on November 12, 2009, Clugston was

again charged, in No. DC 09-511, with criminal endangerment and with a misdemeanor count of driving under the influence ("DUI"), a violation of Mont. Code Ann. § 61-8-401(1)(a). Pet. to Revoke at 3; Aff. in Supp. of Information (Doc. 7-9) at 2-3 ¶¶ 1-4; Information (Doc. 7-10) at 1-2.

On November 18, 2009, Clugston signed a written plea agreement prepared by defense counsel. Plea Agreement (Doc. 7-12) at 1 (letterhead). The agreement addressed both the new charges in 09-511 and the charges to which Clugston had already pled guilty in 07-495. The plea agreement stated that Clugston had "considered the most severe sentence that could be imposed," understood the sentence to be imposed was "within the sole discretion of the sentencing Judge and the State does not make any promise or representation as to what the sentence will be," and understood "if the Court does not impose the sentence recommended by the prosecutor, the Court may . . . allow me to withdraw my plea of guilty." Plea Agreement at 3 ¶¶ 14-15, 17. It also stated that the agreement "encompasses all of the understanding of the parties" and "[n]o other promises have been made . . . other than those specified" in the agreement. *Id.* ¶ 19. The State agreed to recommend a total sentence, incorporating all counts of conviction, of 20 years with ten suspended, plus a consecutive misdemeanor sentence for DUI. *Id.* at 4 ¶ 2; *see also* Sentencing Tr. (Doc. 7-13) at 8:23-9:2 (defense counsel represents that a ten-year sentence, with all time suspended, was a term of the parties' agreement at

the time trial was interrupted and Clugston entered his guilty plea in 07-495). The State agreed Clugston would be permitted to withdraw from the agreement "[a]t any time prior to entry of a guilty plea," after entry of a guilty plea if the State failed to perform its obligations, or "[i]f the Court refuses to accept the Defendant's plea of guilty." *Id.* On November 19, 2009, Clugston pled guilty to both charges in DC 09-511. Minutes (Doc. 7-11) at 1.

On December 11, 2009, a consolidated sentencing hearing was held, addressing both cases together. The State recommended what it had agreed to recommend. Defense counsel requested ten years with five suspended for criminal endangerment in 09-511 and ten years, all suspended, in 07-495. Sentencing Tr. (Doc. 7-13) at 9:2-11. The trial judge sentenced Clugston to the sentence he requested, a total of 20 years with 15 suspended. Written judgment was entered on January 27, 2010. Judgment (Doc. 7-15) at 1.

As a condition of the suspended portions of Clugston's sentences, the trial judge stated:

> [A]ny probation or release into the community would be on the conditions set out on pages 9, 10, 11 and 12 of your Presentence Investigation.
> . . .
>          . . . You do have to complete phase one of a sex offender treatment program. If it can be done at the prison it should be done there, but it's not – but if you do not have time to complete that at prison it can be completed once you're released from prison on either parole or discharge.

Sentencing Tr. at 16:15-18, 16:23-17:3. One of the conditions on page 12 of the

Presentence Investigation Report stated:

> The Defendant will enter and successfully complete **Phase I** sexual
> offender treatment with a MSOTA clinical member or associate
> member with supervision, or equivalent, who is approved by the state
> and the Probation & Parole Officer and at the Defendant's expense.
> The Defendant shall abide by all treatment rules and
> recommendations of the treatment provider.

Presentence Investigation Report (Doc. 7-14) at 12 ¶ 34 (bold text in original); *see also* Judgment (Doc. 7-15) at 8 ¶ 18.

To be clear, the trial court's requirement that Clugston complete phase one

of a sex offender treatment program was *not* a restriction on his eligibility for

parole. It was a condition he was required to fulfill in order to discharge the

suspended terms of his sentence. *Compare* Sentencing Tr. at 15:21-23, 16:13-14,

*with id.* at 15:24-16:3, 16:23-17:3. The trial court's condition is separate and

distinct from the Parole Board's condition, described below. Elsewhere in this

Order, the trial court's requirement that Clugston complete phase one of a sex

offender treatment program will be referred to as "the trial court's phase-one

condition."

Following his incarceration after sentencing, Clugston applied for parole in

2010. On December 30, 2010, the Board of Pardons and Parole ("the Board")

denied his application based on several factors, viz., the nature and severity of the

offense(s), previous criminal history, pattern of similar offenses, multiple offenses,

repeat sex offenses, and strong objection from criminal justice authorities and the community. The Board recommended that Clugston complete phase *two* of sex offender treatment and then request a return to the Board for reconsideration of his application for parole. Case Disposition at 1 (Doc. 7-16 at 19).[1]

On January 24, 2011, Clugston filed a pro se motion in the trial court, seeking to withdraw his guilty pleas. *See* Mot. to Withdraw Plea (Doc. 7-16). On March 23, 2011, he filed a petition for postconviction relief. *See* Pet. for Postconviction Relief (Doc. 7-17). On or about May 20, 2011, counsel filed a reply brief on Clugston's behalf. *See* Reply (Doc. 7-22); Case Register Report (Doc. 7-28) at 6 Entry 146.

On July 6, 2012, the trial court held an evidentiary hearing. Clugston did not testify. Counsel did, as did Clugston's parents. On December 24, 2012, the trial court denied both the petition for postconviction relief and the motion to withdraw the guilty pleas. Trial Court Order (Doc. 7-24) at 1-4.

---

[1] The Board has extremely broad discretion to determine whether an offender may be admitted to parole without posing a danger to the community, Mont. Code Ann. § 46-23-201(1), (5), and, therefore, broad discretion to identify treatment programs that will adequately assure the Board of an offender's suitability for parole.

As the Court understands it, a person can be admitted to phase two of the sex offender treatment program at Montana State Prison only if he either was convicted of a sexual offense or admits he has committed one. Clugston's parole dilemma, therefore, is that he must complete phase two if the Board is to reconsider his application for parole, but he cannot get into the program unless he admits something he declined to admit in 07-495. Clugston reappeared before the Board in December 2012. He was passed to discharge but advised he could reapply for parole consideration if he completed phase two. Final Board Dispositions at 6 (Dec. 2012), *available at* http://bopp.mt.gov/FinalDispositions/2012FinalDispositions.aspx (accessed Sept. 10, 2014).

Clugston appealed. He asserted that he should have been permitted to withdraw his guilty pleas, that there was not a sufficient factual basis for his guilty plea to criminal endangerment in 07-495, that counsel were ineffective when they failed to object to the trial court's phase-one condition, and that the State breached the plea agreement by opposing Clugston's application for parole. On September 24, 2013, the Montana Supreme Court affirmed the trial court's denial of relief. Mem. at 8 ¶ 30, *Clugston v. State*, No. DA 13-0001 (Mont. Sept. 24, 2013).

Clugston timely filed his federal petition for writ of habeas corpus on November 22, 2013. 28 U.S.C. § 2244(d)(1)(A), (2).

## II. Clugston's Claims for Relief

Clugston alleges, first, that his guilty plea to criminal endangerment in 07-495 was not knowing, voluntary, and intelligent, Pet. (Doc. 1) at 8, because counsel "pressured" him and the plea lacked a factual basis, Br. in Supp. (Doc. 2) at 1. Second, he contends that counsel were ineffective when they failed to object to the trial court's phase-one condition. Pet. at 8.

## III. Analysis

The Montana Supreme Court denied both of Clugston's claims on the merits. Consequently, Clugston may obtain federal habeas relief only if the Montana Supreme Court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," or if the denial was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

### A. Voluntariness of the Guilty Plea

At the time Clugston pled guilty, the trial court did not ascertain on the record that he understood the nature of the charge and did not require Clugston to admit specific facts the State could prove to support a verdict or otherwise acknowledge the factual basis of the plea. To prevail on his first claim for relief, Clugston must show the trial court's acceptance of his guilty plea under these circumstances was "inconsistent with the rudimentary demands of fair procedure" or "constituted a compete miscarriage of justice." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (internal quotation marks omitted). More specifically, he must show that "he was actually unaware" of the matters the trial court failed to advise him of, *id.* (emphasis added), and that, "if he had been properly advised by the trial judge, he would not have pleaded guilty," *id*. As stated above, he must also show that it was objectively unreasonable for the Montana Supreme Court to conclude his guilty plea was knowing, voluntary, and intelligent. 28 U.S.C. §

2254(d).

## 1. Was Clugston Actually Unaware of Anything?

After the post-conviction hearing – at which counsel testified and Clugston did not – the trial court found that Clugston knew the substitute charge of criminal endangerment was "based upon what happened in the bedroom on October 20, 2007," between him and Heather. *See* Trial Court Order (Doc. 7-24) at 2 ¶ 5. The trial court implicitly rejected the possibility, based on Clugston's parents' testimony as to what Clugston told them, that Clugston thought he was pleading guilty to driving recklessly with Heather over Lookout Pass. *See* Evid. Hr'g Tr. at 14:5-15:4, 43:8-16.

Clugston disagrees with the trial court's findings, but he does not claim they were "unsupported by sufficient evidence, that the process employed by the state court [was] defective, or that no finding was made by the state court at all." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). Consequently, the trial court's findings are presumed correct. *Id.* at 1000; 28 U.S.C. § 2254(e)(1). Although Clugston may dispute them if he can point to clear and convincing record evidence against them, 28 U.S.C. § 2254(e)(1), *Pinholster* prohibits him from expanding the record unless and until he demonstrates the unreasonableness of the Montana Supreme Court's decision. And nothing in the record remotely suggests the trial court's finding was wrong, much less clearly and convincingly wrong. The finding

was based on both counsels' testimony. *E.g.*, Evid. Hr'g Tr. at 81:6-82:20, 129:3-19. The trial court's finding that Clugston knew his guilty plea to criminal endangerment was based on what happened in the bedroom defeats the possibility that his guilty plea to criminal endangerment was "inconsistent with the rudimentary demands of fair procedure" or "constituted a complete miscarriage of justice." *Timmreck*, 441 U.S. at 783.

A review of the state court record demonstrates the soundness of the trial court's finding. As counsel explained it, Clugston intended to testify on his own behalf. Counsel prepared him to do so well in advance of trial. They were encouraged by his pre-trial ability to testify coherently while avoiding the "mine field" he could expect to encounter on cross-examination, due to his record of arrests for rape or sexual assault. *See, e.g.*, Evid. Hr'g Tr. at 67:4-68:6, 118:6-120:9. On the morning of the day he would have to testify, however – for reasons counsel could not explain and Clugston did not offer to explain – Clugston was unable to navigate the "land mines." *Id.* at 66:2-68:6, 69:12-71:11, 121:18-122:18. The record demonstrates that Clugston sought a plea agreement because his inability to testify made him significantly less confident he could defeat the charges, and a plea agreement was the best way to maximize his ability to contain the consequences of conviction.

Moreover, by law, a substitute charge was the only available means of

satisfying each party's concerns. Montana law does not permit a no-contest plea to a sexual offense. Mont. Code Ann. § 46-12-204(4). Without a substitute charge, Clugston had only two options: either press forward to face the jury's verdict, or admit he knowingly sexually penetrated Heather without her consent. The criminal endangerment charge created wiggle room that Clugston did not have without it. Having successfully persuaded the State to agree to a substitute charge that gave Clugston enough wiggle room to plead guilty without being convicted of a sex offense, counsel and Clugston proceeded to wiggle. Clugston correctly asserts that his "vagueness, at the orchestration of his attorney, did not demonstrate factual guilt or that Mr. Clugston had a complete understanding of the criminal endangerment charge." Br. in Supp. at 7. But the opportunity to be vague was exactly what he bargained for. Evid. Hr'g Tr. at 101:8-108:24.

Clugston is also mistaken when he says the trial court "did not have any facts to support the basis for the new charge." Br. in Supp. at 3. The affidavit in support of the information charging sexual intercourse without consent and witness tampering, Aff. in Supp. of Information (Doc. 7-1) at 3-4 ¶¶ 1-5, was the only factual basis of record for any charge by the State. The parties agreed an amended information would be filed, but no one considered filing an amended affidavit in support of a charge of criminal endangerment. Based on this lacuna, Clugston claims he lacked "the benefit of any written amended affidavit," Br. in Supp. at 7,

and, as a result, "nobody knew what Mr. Clugston had actually done wrong," *id.* at

5. On the contrary, the fact that no amended affidavit was even contemplated is

further evidence that everyone already knew the factual basis of the charge. The

only facts the State ever put at issue were those relating to Clugston's conduct in

the bedroom on October 20, 2007, where police officers responding to a 911 call

arrested him in the act of penetrating Heather. In this light, Clugston's agreement

to undergo a sex offender evaluation was thoroughly unremarkable,[2] as was his

uncomplaining and successful completion of the evaluation, Evid. Hr'g Tr. at

134:24-135:10.

Clugston contends that counsel "coerced" his plea and emphasizes the

rushed nature of the proceedings. Br. in Supp. at 2-4. Guilty pleas reached during

trial are always rushed to some extent. On the record at the time he changed his

plea, Clugston testified he had had sufficient time to discuss matters with his

counsel and he was "comfortable" with entering a guilty plea. Change of Plea Tr.

(Doc. 7-4) at 4:16-21. At the evidentiary hearing, Clugston failed to show that he

was too rushed or was coerced. *See* Evid. Hr'g Tr. at 29:10-25, 52:20-53:13,

---

[2] Clugston's current counsel does not accurately represent the record when he claims that the sex offender evaluation was mentioned "after Mr. Clugston had left to be with his parents." Br. in Supp. (Doc. 2) at 4. Neither the transcript of the change of plea hearing nor any evidence or testimony admitted in the state collateral proceedings suggests Clugston had "left" when the statement was made. Gutierrez-Falla may have "quickly responded in the affirmative" when the prosecutor stated (it was not a "quip," *see* Pet. at 4 ¶ 14) the parties had agreed to "a sex offender evaluation" (she did not call it "a psychosexual evaluation"). The record shows no reason to believe counsel's response was motivated by anything other than the truth of the prosecutor's statement.

14

80:10-21, 84:20-22.

## 2. Would Clugston Have Continued With Trial?

Clugston also cannot show, and does not even allege, a reasonable probability he would have continued with trial had the trial court fully advised him about his plea to criminal endangerment. Clugston prepared his defense based on his own testimony and promised the jury in opening statement that he would testify, Evid. Hr'g Tr. at 116:19-24, but when the time came for him to testify, he was unable to do it. One of Clugston's lawyers thought Heather's testimony had been "destroyed," *id.* at 116:3-8, and both were satisfied they had seriously undermined her credibility, *id.* at 92:6-93:3. But police witnesses gave testimony that corroborated some of what Heather said, and Clugston needed to testify to "explain . . . things that the police saw and the insinuations that could be drawn from them," *id.* at 116:25-117:20.[3] Both counsel believed the defense was materially harmed by Clugston's inability to testify. Clugston points to no evidence to the contrary.

Under these circumstances, Clugston chose to plead guilty, and his choice was a knowing and intelligent one. By pleading to criminal endangerment rather than sexual intercourse without consent, he avoided a two-year mandatory

---

[3] Further, without Clugston's testimony that his underwear fell into the toilet or sink by accident, a juror might be more likely to view the incident as a deliberate attempt to destroy evidence and, thus, an indication that Clugston knew he had done something wrong in the bedroom.

minimum prison term, and he cut the maximum possible penalty from life or 100 years to ten years. Evid. Hr'g Tr. at 147:3-15. By persuading the trial court to agree not only to the charge but also to the proposed fully-suspended sentence, Clugston forestalled a strong likelihood that his record of prior charges and arrests would result in a lengthy term of incarceration. *Id.* By agreeing to a sex offender evaluation that counsel believed would be favorable to him, *see* Evid. Hr'g Tr. at 104:12-16, Clugston minimized the chance the trial court would require a full regimen of sex offender treatment. And by pleading to criminal endangerment instead of sexual intercourse without consent, Clugston avoided an otherwise self-executing requirement that he register as a sex offender for the rest of his life, unless he successfully petitioned for rescission of the requirement after registering for at least ten years. *See generally* Mont. Code Ann. §§ 45-5-503(2), 46-23-502(9)(a), (10), -506(1), (3)(b).[4]

Given these very significant advantages and Clugston's inability to present the defense he had planned, there is no reasonable probability he would not have pled guilty to criminal endangerment had the trial court reiterated its factual basis. *See generally United States v. Dominguez-Benitez*, 542 U.S. 74, 81-85 & nn.7, 9 (2004).

---

[4] *See also* Mont. Code Ann. § 46-23-512 (providing that "[a] defendant convicted of an offense that would otherwise not be subject to registration" may agree to comply with registration requirements in a plea agreement and a court accepting the plea agreement may require compliance with registration requirements); Evid. Hr'g Tr. at 161:7-10.

### 3. Conclusion

Clugston fails to show that the Montana Supreme Court's decision was objectively unreasonable. Relief is precluded by 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Counsel

Clugston's second claim for relief contends that counsel were ineffective because they failed to object to the trial court's phase-one condition. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Clugston must show that (1) counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. And, again, because the Montana Supreme Court considered this claim on the merits, the standards of § 2254(d) apply.[5] Because *Strickland* demands deference to counsel's reasonable decisions and § 2254(d) requires deference to state courts' reasonable decisions, review of this claim is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 788 (2011).

At the evidentiary hearing in state court, Gutierrez-Falla explained why he

---

[5] In his Reply, Clugston asserts that "the Montana Supreme Court never addressed Mr. Clugston's argument that he received ineffective assistance of counsel when his attorneys failed to object to the sex offender treatment requirement of his judgments." Reply at 10. But the Montana Supreme Court specifically pointed out that Clugston "was aware" of the "treatment recommendation made in the presentence investigation" report, and Clugston "never asked the attorney to amend his sentence." Mem. (Doc. 7-27) at 7 ¶ 25, *Clugston*, DA 13-0001.

advised Clugston to agree to obtain a sex offender evaluation as part of his plea agreement with the State:

> . . . I was fairly certain that if we – I was fairly certain that a sex offender evaluation of Chuck would reveal that he is not a sexual predator, and I was certain that it would reveal that if he is sober and in his right mind that he would not engage in this sort of conduct. . . .
>
> . . . [G]iven his prior criminal history[6] which I knew would be made available to the sentencing judge I thought it would be a good idea, and discussed it with Chuck, to let the court know whether he were a dangerous sexual predator. I assumed he would not be found to be one, he wasn't found to be one, and it was my opinion that based on that the court would more likely go along with our recommendation rather than say that it could not go along with the recommended sentence and then he'd be back in front of a jury.

Evid. Hr'g Tr. at 104:11-16, 104:22-105:7. This explanation is reasonable.

But counsel also testified that "it was never gonna be a condition of his sentence that he complete any sex offender treatment," "[h]e was never gonna be required to either register as a sex offender or undertake any sex offender treatment." *Id.* at 107:20-22, 108:5-7. These statements suggest counsel should at least have considered objecting to the condition when it was imposed at sentencing.

The presentence investigation report, which contained the condition, was made available to counsel and to Clugston before the sentencing hearing. Counsel and Clugston reviewed it. Both counsel and Clugston himself were aware of the

---

[6] *See, e.g.*, Evid. Hr'g Tr. at 164:3-20.

condition before it was imposed. Sentencing Tr. (Doc. 7-13) at 3:14-4:1. Clugston produced no evidence that counsel did not discuss the condition with him or that he wanted to discuss it. Therefore, there is no reason to think Clugston was surprised to hear the trial court impose the phase-one condition.

Further, at sentencing, Clugston asked the trial court to reject the State's recommendation of ten years in prison and impose a five-year prison term instead. To support the defense request – which was successful – counsel relied on Dr. Scolatti's sex offender evaluation to characterize Clugston as "a prime candidate for rehabilitation." *Id.* at 11:12-13:15. To make the "prime candidate" argument while resisting a condition for phase-one treatment would have undermined the attempt to minimize Clugston's prison time. That was particularly so in light of two additional facts. First, counsel knew Clugston's second conviction proved beyond doubt that he was incapable of refraining from drinking, and his arrest record demonstrated he tended to commit serious crimes when drunk. Second, the probation officer who recommended the condition also supported the defense's request for a five-year prison term. When requesting a sentence that is less than that sought by the State, any reasonable defense counsel would want the support of the probation officer. Counsel's lack of objection was a reasonable decision not to rock the boat.

As against this record, Clugston relies principally on the harmful effect he

believes the condition had a year later on the Board's review of his application for parole. He also refers to the rather attenuated possibility that the trial court might one day re-incarcerate him if he fails to comply with any follow-up care required by a treatment provider in connection with the first phase of treatment. But neither of these contentions retrospectively makes it unreasonable for counsel to have believed, at the time of Clugston's sentencing, that the condition was not onerous and the best choice was to accept it.

Clugston also contends that he would have been immediately eligible to withdraw his plea if counsel had objected to the trial court's phase-one condition and the court had overruled it. He argues that "treatment had never been part of the plea agreement," and the trial court agreed to allow Clugston to withdraw his plea if it did not follow the agreement. Reply at 7. But the plea agreement did not say anything one way or the other about sex offender treatment; by Clugston's logic, *all* the conditions of the suspended sentence were contrary to the plea agreement. At any rate, as there is no evidence Clugston indicated to counsel that he was unhappy with the condition or with his guilty plea in 07-495, there was no reason for counsel either to move to withdraw the plea or to object to the trial court's phase-one condition.[7]

---

[7] Clugston also seems to suggest counsel should not have accepted the phase-one condition as part of the suspended sentence in 09-511, because sex offender treatment shared no "nexus" with the DUI-related conviction in that case. Reply at 7 n.1. Clugston did not mention

The record shows that counsel reasonably decided to accept the trial court's requirement that Clugston complete the first phase of a sex offender treatment program. Clugston fails to identify any fact suggesting otherwise. The Montana Supreme Court's decision was not only reasonable but correct. Federal habeas relief is precluded. 28 U.S.C. § 2254(d); *Richter*, 131 S. Ct. at 788.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Clugston's claims appear to arise from dissatisfaction on his part with the Parole Board's requirement that he complete phase two of the prison's sex offender treatment program in order to be considered for parole. *See, e.g.*, Reply at

this point in the Montana Supreme Court, Appellant Br. (Doc. 7-26) at 31-33; Reply Br. (Doc. 2-4) at 15-20, so it hardly undermines the reasonableness of the Montana Supreme Court's decision. As the point is made in a footnote in the reply brief, the Court will not consider it as an independent claim for relief, which would be defaulted and time-barred anyway.

8. But the Board's action was not legally "[d]ue to" the trial court's phase-one condition, nor has Clugston pointed to any fact remotely suggesting the Board chose to require him to complete sex offender treatment because of anything the trial court or defense counsel did or did not do. Disposition of Clugston's application for parole is simply not relevant to Clugston's habeas claims.

The Montana Supreme Court decided Clugston's guilty plea was knowing, voluntary, and intelligent. Clugston points to nothing objectively unreasonable about that decision. Clugston's plea to criminal endangerment enabled him to avoid additional harsh consequences that necessarily would have followed if the jury had convicted him of sexual intercourse without consent. He did not testify at the evidentiary hearing in state court. There was no persuasive evidence that he did not understand what he was doing or that he would not have pled guilty but would have continued with trial if he had understood. The record, on the contrary, demonstrates that Clugston knew exactly what he was doing and did it for rational and legitimate reasons.

The Montana Supreme Court also decided that counsel did not render ineffective assistance by accepting the trial court's conditioning the suspended term of Clugston's sentence on his completion of the *first* phase of a sex offender treatment program (as opposed to the Parole Board's requirement that he complete the *second* phase). Under "doubly" deferential review or otherwise, the Montana

Supreme Court's decision was reasonable. At the time sentence was imposed, reasonable counsel could have believed Clugston was more likely to receive less prison time if he accepted the condition, and, again, Clugston failed to present any evidence that counsel knew he opposed the trial court's condition.

Clugston has not made a showing with any substance to it either that his guilty plea to criminal endangerment was involuntary, unknowing, or unintelligent or that counsel unreasonably failed to object to a condition of the suspended portions of Clugston's sentences. There is no reason to encourage further proceedings. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## ORDER

1. Clugston's Petition (Doc. 1) is DENIED for lack of merit.

2. The Clerk of Court shall enter, by separate document, judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED as to both claims for relief.

DATED this 12th day of September, 2014.

 */s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge